So Ordered.

Dated: March 31, 2025



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Jonathan J Landis,

        Debtor.

Case No. 23-25448-gmh

Chapter 7

**OPINION AND ORDER DENYING KATHLEEN HINK'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO DEBTOR'S OBJECTION TO CLAIM NUMBER 6**

In late November 2023, Jonathan Landis filed with this court a voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby commencing this case. Kathleen Hink, the mother of Landis's former spouse, timely filed a proof of claim for nearly $107 thousand, describing the basis of the claim as, "money loaned, lawyer fees, [and] money owed based upon court orders". Claim No. 6-1, at 2 (filed Apr. 13, 2024); see ECF No. 14, at 1 (imposing a May 6, 2024 deadline for the filing of proofs of claim).

Landis objects to Hink's claim, seeking its disallowance, at least to the extent that the claim is based on "an agreement" to "reimburse" Hink for the cost of building an addition (a "mother-in-law suite") to the home Landis shared with Hink's daughter

when they were married. ECF No. 63, at 3–4.[1] In Landis's view, that agreement is unenforceable for any of several reasons, and even if it is enforceable, the conditions under which it would have entitled Hink to payment were not (and cannot now be) satisfied. *Id.* at 5–6. Hink argues that, given the proceedings and final judgment in Landis and her daughter's divorce case, Landis is barred—by issue preclusion or judicial estoppel, or both—from disputing the validity and amount of his debt to her, and on those grounds, she moves for summary judgment against Landis with respect to his objection to her claim. See ECF No. 90-1, at 5–16.[2]

I

The court must grant Hink summary judgment only if she "shows that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] For the most part, Hink and Landis agree on the material facts.[4] Those facts are as follows:

---

[1] The chapter 7 trustee separately objected that $6,535.63 of the claim should be disallowed because it is for attorney fees and costs that Hink incurred postpetition, and Landis echoed that objection. ECF No. 62, at 1; ECF No. 63, at 6. At a November 5, 2024 hearing, the court disallowed Hink's claim to that limited extent—sustaining the trustee's objection and, in relevant part, Landis's objection—and set certain deadlines for litigating "the remainder of [Landis]'s objection to [the] claim". ECF No. 78, at 1.

[2] Hink's motion for summary judgment is also based in part on the *Rooker-Feldman* doctrine. See ECF No. 90-1, at 5 & 16–17. In a December 16, 2024 docket order, the court rejected the application of that doctrine. See ECF No. 93.

[3] Federal Rule of Civil Procedure 56 applies here by operation of Federal Rules of Bankruptcy Procedure 7056 & 9014(c). Fed. R. Bankr. P. 7056 (generally applying Rule 56 in adversary proceedings); Fed R. Bankr. P. 9014(c) (generally applying many of the Part VII rules for adversary proceedings, including Rule 7056, to "contested matter[s]"); Fed. R. Bankr. P. 3007 advisory committee notes ("The contested matter initiated by an objection to a claim is governed by rule 9014 . . . .").

[4] In her reply brief, Hink raises what she calls "a preliminary matter": she filed with her motion a separate document listing proposed findings of fact in numbered paragraphs (ECF No. 90-2), Landis "failed to respond" directly to that document, "and therefore this court must accept [her proposed findings of fact] as undisputed in accordance with federal rules of civil procedure, bankruptcy, and local court rules." ECF No. 96, at 2 (citing Fed. R. Civ. P. 56(e)(2) & (3)). As a result of this, Hink says, Landis has "explicitly acknowledged the debt . . . and is now blatantly disregarding his obligation to pay" her. *Id.* This perfunctory, inadequately supported, and ultimately incorrect argument is, at best, a distraction. The only "rules" Hink cites for her supposed mandate—that "this court *must* accept [her proposed findings of fact] as undisputed", *id.* (emphasis added)—are *permissive*: they concern what "the court *may*" do "[i]f a

Landis and Hink's daughter Linda were married and shared a home in Muskego, Wisconsin. In 2018 Landis and Linda agreed to allow Hink to pay for the construction of an addition that "was to be used as a 'mother-in-law suite' for [Hink] to live in." ECF No. 94-3, at 1, ¶5. Construction began that November and concluded the following April. *Id*. at 1–2, ¶¶5 & 10. Hink moved in shortly thereafter. *Id.* at 2, ¶11. In May 2019 Landis and Linda signed a document agreeing to "reimburse [Hink] the cost of building the addition", specified as $185,000, "from the sale of the[] . . . property", on the following conditions: "if something should happen to Jonathan Landis and/or Linda Landis and they sell their house for any reason or upon the death of Jonathan Landis and/or Linda Landis; and if Kathleen Hink is still living there". ECF No. 90-6, at 1. Before signing this agreement, Landis understood the addition as "a gift, . . . the value of [which] was to be passed along and inherited" when Hink died. ECF No. 94-3, at 2, ¶¶8–9. Hink also paid $27,485 for new siding on the home. Hink maintains that this was a loan, and that assertion is supported by an affidavit from Linda. ECF No. 90-5, at 1, ¶5.

On November 1, 2021, Linda initiated an action for divorce from Landis in the circuit court for Waukesha County, Wisconsin. *In re Marriage of Landis*, No. 2021FA001142 (Waukesha Cnty. Cir. Ct.).

On January 27, 2023, the circuit court held an evidentiary hearing, mainly to adjudicate issues on which the parties had not reached an agreement, such as the division of the marital property and debts and whether to require one of the divorcing

---

party . . . fails to properly address another party's assertion of fact as required by Rule 56(c)". Fed. R. Civ. P. 56(e) (emphasis added). And even if Rule 56(e) were mandatory, to the limited extent that Landis disputes Hink's version of the material facts, he has done so as Rule 56(c) requires: by citing and discussing materials in the record. Rule 56(c) does <u>not</u> require that a party opposing a motion for summary judgment present a direct, point-for-point response if the movant opts to present proposed findings of fact as Hink did here. Therefore, not only is the court not required to grant Hink relief under Rule 56(e), or any other federal or local rule, based on Landis's failure to respond to Hink's proposed facts in the manner she deems necessary, Hink is not entitled to such relief.

spouses to pay the other maintenance. The only witnesses were Linda and Landis, and they testified about a host of matters, including the nature and value of their assets and debts (as listed in their financial disclosures in the case) and the custody and placement of and ongoing expenses for their minor children. See generally ECF No. 90-18. Linda testified that she wanted the court to order the sale of the Muskego home, with the sale proceeds used to repay Hink for the addition and siding—though she conceded, "I don't believe that there will even be enough money to pay my mom back [in full]"—and asked that the debt to Hink "be split between the parties". *Id.* at 35:23–40:3 & 51:20–23. Linda also conceded that both she and Hink were no longer living at the home but that they "were pretty much forced to leave due to the conditions of the home", alleging that Landis had made continued cohabitation intolerable. *Id.* at 36:24–37:19 & 66:13–15. Landis testified that he signed the document agreeing to repay Hink for the mother-in-law addition but that he wanted the court to "qualify this as a gift or inheritance". *Id.* at 104:24–105:23. He did not "dispute that there is the siding debt to [Hink]", "separate from the $185,000.00" for the mother-in-law addition. *Id.* at 106:8–13. But he asked that "the siding loan to . . . Hink . . . . go on [Linda's] side of the column" in the property division. *Id.* at 125:25–126:5.

On March 15, 2023, the judge in the divorce action issued an oral ruling. Among many other issues, the judge ruled on the division of Landis and Linda's property (both assets and debts). The judge discussed "[t]he factors" involved in determining "the division of property" and mentioned "[o]ther economic circumstances like . . . written agreements. . . . between . . . Hink, the mother-in-law, and the[] parties." ECF No. 90-16, at 7:23–8:15. The judge ordered the sale of the Muskego home and then "made a determination . . . . as to the issue of the mother-in-law amount", "find[ing] that that is a marital debt" and "[t]hat each party is responsible for one-half of that amount", but the judge expressly opted "not . . . to use the sale of the home to pay that off." *Id.* at 17:6–16 & 23:15–21. The judge similarly characterized "[t]he amount that was involved in the

siding, the $15,498.00,. . . [as] a marital debt" and divided "that responsibility . . . 50/50", again declining to "order[] that it be paid from the proceeds of the home sale." *Id.* at 23:22–24 & 27:13–18.

On April 19, 2023, Hink sued Landis in Waukesha County, seeking a declaration that Landis owes her "half of the debt . . . as ordered by the [divorce] court" and "[c]ompensatory damages in the amount of $100,232.50, which equals one-half of the loan given by [Hink] to [Landis] and Linda." ECF No. 90-9, at 6; see also *Hink v. Landis*, No. 2023CV000607 (Waukesha Cnty. Cir. Ct.).

On August 21, 2023, the divorce court entered a final judgment consistent with the court's March 15, 2023 oral ruling. ECF No. 90-17. The final judgment orders Linda to pay Landis maintenance and orders Landis to reimburse Linda $5,016.74 for previously ordered expenses and a contribution to Linda's attorney fees. *Id.* at 8–9. In a separate section, the judgment divides the parties' debts and financial obligations and decrees, "Each of the parties shall be responsible for the following debts and liabilities, and each shall hold the other harmless for the payment thereof", listing debts to Hink of $185,000 for the "MIL Suite loan" and $15,498 for the "Siding loan", both of which are "split evenly" between the parties. *Id.* at 12–13. The judgment does not order either party to pay Hink.

On November 28, 2023, Landis filed a petition in this court for relief under chapter 7 of the Bankruptcy Code. After the United States trustee filed a complaint objecting to Landis's discharge, Landis waived that discharge. See ECF Nos. 44 & 50–53. Hink then filed a proof of claim, and Landis objected to her claim, as described above.[5] See Claim No. 6-1 & ECF No. 63.

---

5. Because Hink's claims against Landis will not be discharged, he has standing to object to her claims against the bankruptcy estate. See *In re Knight-Celotex, LLC*, 695 F.3d 714, 720 (7th Cir. 2012); see also *Mandel v. Mastrogiovanni Schorsch & Mersky (In re Mandel)*, 641 F. App'x 400, 403–04 (5th Cir. 2016) (per curiam).

II

Hink requests summary judgment on Landis's objection to her claim based on issue preclusion and judicial estoppel. But the court need not address judicial estoppel. Hink only asks the court to apply that doctrine with respect to Landis's purported debt to her for siding. Landis's claim objection does not mention that debt, so the allowance or disallowance of that portion of Hink's claim is not at issue.[6]

Issue preclusion applies in proceedings in bankruptcy cases. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). And a federal court must give a judgment of a state court the same preclusive effect that it would have in the state's own courts. 28 U.S.C. §1738 ("The records and judicial proceedings of any court of any such State . . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."). Consequently, this court must apply Wisconsin law to determine whether, and if so, to what extent, the final divorce judgment precludes litigation as to any relevant issues raised by Landis's objection to Hink's claim.

In Wisconsin, to determine whether issue preclusion applies, a court must first assess whether "the question of fact or law that is sought to be precluded [was] actually

---

6. At a November 5, 2024 hearing, the court asked whether Landis's objection is to both remaining portions of Hink's claim (for the mother-in-law addition and the siding), and Landis's counsel reported that he needed to speak with his client to clarify that issue. ECF No. 77, at 58:30–1:01:40. Whether such a conversation has occurred and whether Landis and his counsel have reached a decision about how to proceed, nothing that Landis has filed since that hearing clearly states that he is objecting to the portion of Hink's claim that is for the siding: Landis's objection to Hink's motion for summary judgment mentions an "alleged debt[]" for the siding, in an early background section, and argues against the application of judicial estoppel but does not, at any point, suggest any basis for disallowance of that portion of Hink's claim (and his objection to the claim does not, either). See ECF No. 94, at 1–3 & 9–11; see also ECF No. 63. Moreover, Landis's statements in his declaration filed in support of his objection to Hink's summary-judgment motion concern only the mother-in-law addition. See ECF No. 94-3. For these reasons, and based on the record as a whole, the court determines that neither Landis nor any other party in interest has objected to the portion of Hink's claim that is for the asserted siding debt. Consequently, the court need not (and, in fact, cannot) decide whether that portion of the claim is allowed (and if so, in what amount): that portion of the claim "is deemed allowed" by operation of 11 U.S.C. §502(a).

. . . litigated in a previous action and . . . necessary to the judgment." *Mrozek v. Intra Fin. Corp.*, 699 N.W.2d 54, 61 (Wis. 2005) (first citing *Town of Delafield v. Winkelman*, 675 N.W.2d 470, 479 (Wis. 2004); and then citing *Michelle T. ex rel. Sumpter v. Crozier*, 495 N.W.2d 327, 329–30 (Wis. 1993)). "[I]t is not the similarity between the types of litigation or actions involved but between the factual [and legal] issues and their roles in the respective actions that is important to whether [issue preclusion] will apply." *State v. Miller*, 683 N.W.2d 485, 493 (Wis. Ct. App. 2004) (alterations in original) (quoting *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 497 N.W.2d 756, 764 (Wis. Ct. App. 1993)). "[T]he doctrine is aimed at limiting litigation of an issue that has actually been litigated." *Id.* at 494.

If an issue was actually litigated in a past action and necessarily resolved by the judgment in that action, "the . . . court must then conduct a fairness analysis to determine whether it is fundamentally fair to employ issue preclusion given the circumstances of the particular case at hand." *Mrozek*, 699 N.W.2d at 61 (citing *Paige K.B. ex rel. Peterson v. Steven G.B.*, 594 N.W.2d 370, 375 (Wis. 1999)). The Wisconsin Supreme Court, in *In re Estate of Rille ex rel. Rille*, listed the following "five factors in determining whether the application of issue preclusion satisfies the notions of fundamental fairness":

1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;

2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;

3) Do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue;

4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and

> 5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

728 N.W.2d 693, 707 (Wis. 2007) (first citing *Michelle T.*, 495 N.W.2d at 330–31 & n.10; and then citing *Precision Erecting, Inc. v. M & I Marshall & Isley Bank*, 592 N.W.2d 5, 12–13 (Wis. Ct. App. 1998)). "No weight is assigned to any factor; the weighting is in the discretion of the trial court." *DeGuelle v. Camilli*, 724 F.3d 933, 937 (7th Cir. 2013) (first citing *Estate of Rille*, 728 N.W.2d at 707; and then citing *United States v. Rosales*, 716 F.3d 996, 997 (7th Cir. 2013)).[7]

---

7. *DeGuelle* observes several conceptual difficulties with the "five-factor 'test'" adopted by *Estate of Rille*:

> The first factor gestures, a little mysteriously, to the requirement that the loser have been able to appeal the adverse ruling sought to be used against him; the requirement is diluted in the Wisconsin supreme court's formulation by the trial judge's having discretion as to how heavily to weight it. Factor 2 we do not understand at all. Factors 3 and 4 are aspects of the requirement that the loser have had an opportunity for an adequate hearing in the first proceeding. Factor 5, while also related to the adequacy of that hearing, opens a Pandora's Box by invoking public policy, individual circumstances, and fundamental fairness. So the five-factor test is really eight factors. Would we could stop with eight! We can't; for after listing the eight factors the opinion states that "these enumerated factors are illustrative; they are not exclusive or dispositive. . . . The final decision whether the doctrine of issue preclusion [collateral estoppel] should be applied rests on the [trial] court's sense of justice and equity." The "test" thus is formless. (And what by the way is the difference between "justice" and "equity"?)
>
> Later in the opinion we learn that in applying factor 5 the trial court must "'balance competing goals of judicial efficiency and finality, protection against repetitious or harassing litigation, and the right to litigate one's claims.'" That brings the number of factors to 11, though in a later case we learn that "the overarching task" in applying the doctrine of collateral estoppel is "to make a holistic, discretionary determination regarding fundamental fairness." Holistic analysis is the opposite of dissecting an issue into parts.

724 F.3d at 937–38 (citations omitted) (omission from quotation in original) (first quoting *Estate of Rille*, 728 N.W.2d at 707; then quoting *Estate of Rille*, 728 N.W.2d at 712; and then quoting *Aldrich v. Lab. & Indus. Rev. Comm'n*, 814 N.W.2d 433, 458 (Wis. 2012)). Still, this court's duty is to apply Wisconsin's issue-preclusion law as best it can, so it considers *Estate of Rille*'s five non-exclusive factors, as well as other

In order to determine whether issue preclusion applies to bar litigation in this bankruptcy case of Hink's underlying claims, in whole or in part, it is important to clarify exactly what factual and legal issues must be resolved to adjudicate Landis's objection to Hink's claim.[8] Landis's objection raises numerous issues with respect to Hink's asserted claim for reimbursement of her costs for the mother-in-law suite, including whether the agreement to repay her is void because it concerns real property but is not signed by Hink, whether a lack of consideration means that a contract was never formed in the first place, and whether the conditions under which the agreement entitles Hink to reimbursement were not satisfied.

For the most part, the state court in Landis's divorce case did not even consider, much less resolve, these issues. In an oral ruling on property division, the judge broadly referred to his consideration of "economic circumstances", including "written

---

relevant considerations, guided by its sense of justice and equity, to determine whether applying issue preclusion to establish the validity and amount of Hink's debt based on the divorce judgment would be fundamentally fair. See *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 369 (1996) ("Absent a partial repeal of the Full Faith and Credit Act, 28 U.S.C. § 1738, by another federal statute, a federal court must give the judgment the same effect that it would have in the courts of the State in which it was rendered.").

8. Hink's filings leave some doubt as to what she believes to be the legal basis for her claim: is the claim for debts arising under contract law (or other state law, e.g., for a tort, such as unjust enrichment) or arising from the final divorce judgment? See, e.g., ECF No. 90-1, at 5 ("Judge Ramirez entered a written Order that Debtor owes Kathleen [Hink] $106,784.63," which "bar[s] this Court from relitigating and invalidating Kathleen's proof of claim."); Claim No. 6-1, at 2 (describing the basis of the claim as "money loaned, lawyer fees, money owed based upon court orders"). The clear answer is the former, rather than the latter (i.e., any liability that Landis has to Hink must be based on unadjudicated claims under Wisconsin law, not the final divorce judgment). Hink was not a party to Landis's divorce action, so while the final judgment in that action is, in a sense, *against* him, it is <u>not</u> a judgment in *her* favor; she points to no authority under which, or any mechanism by which, she can seek to enforce that judgment directly; and her underlying claims were not merged into that judgment. See, e.g., *Bank of Sun Prairie v. Marshall Dev. Co.*, 626 N.W.2d 319, 322 (Wis. Ct. App. 2001) (discussing "the merger doctrine"). Simply put, Hink's claims were not, and could not have been, adjudicated in Landis's divorce action. If Hink were seeking to apply *claim* preclusion, that would be the end of the analysis. See, e.g., *id.* at 323 (quoting *Brenton St. Bank v. Tiffany*, 440 N.W.2d 583, 585 (Iowa 1989)) (describing the merger doctrine as "an aspect of res judicata"); see also e.g., ECF No. 90-1, at 5–6 (first citing *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993); and then citing *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988)) ("The term claim preclusion replaces res judicata; the term issue preclusion replaces collateral estoppel."). But she is not. The court must, therefore, consider the factual and legal issues that the state court actually adjudicated in the divorce action and compare or contrast those to the issues that must be resolved here.

agreements. . . . between . . . Ms. Hink, the mother-in-law, and the[] parties." ECF No. 90-16, at 8:9–14. And, "as to the issue of the mother-in-law amount", the judge said, "I'm going to find that that is a marital debt. . . . [E]ach party is responsible for one-half of that amount." *Id.* at 23:16–19. But the issue the court faced and resolved was whether Hink's spending for the mother-in-law suite should be treated as a *gift*, as Landis maintained throughout the divorce case.[9] The court's decision to divide responsibility for a debt related to the mother-in-law suite entails a conclusion that Hink's spending was not proven to be a gift. In dividing that debt for purposes of the divorce judgment's property division, the court seems to have simply taken the apparently disclosed amount of the debt and applied the statutory default by equally dividing it between the spouses. Wis. Stat. §767.61(3) ("The court shall presume that all property [subject to division] . . . is to be divided equally between the parties . . . .").

While Hink's payments for the addition were characterized as creating a debt for purposes of the property division, nothing in the record suggests that the court in the divorce action considered in detail or actually determined the legal basis of that debt, much less assessed the validity or enforceability of that debt under applicable law. At the evidentiary hearing, Linda testified about "the signed agreement to pay [her] mom back", but she further testified that they "were both under the assumption that [the addition] . . . would have eventually been part of an inheritance", which Landis corroborated in his own testimony. See ECF No. 90-18, at 50:8–19, 65:15–67:22, 104:24–105:23 & 150:7–152:13. There was also testimony about whether it would be "fair" to

---

[9] Had Landis prevailed on this argument, there would have been no debt related to the mother-in-law suite for the court to divide because gifts do not give rise to enforceable obligations. See, e.g., *Black's Law Dictionary* 827 (12th ed. 2024) (defining "gift" as "[t]he voluntary transfer of property to another without compensation" or "[a] thing so transferred"); see also, e.g., *Rohde v. Skomski (In re Estate of Rohde)*, 98 N.W.2d 440 (Wis. 1959) (considering whether a transfer of property from a parent to a child was a loan or a gift); *Smith v. Seher (In re Estate of Schmidt)*, 62 N.W.2d 908 (Wis. 1954) (considering whether a son who provided his father with food in the years before his father's death could recover from his father's estate based on his father's "promise to pay for the food by a provision in [his] will" or the son "furnished the food gratuitously and without expectation of reimbursement").

leave Hink with nothing to show for her spending. *Id.* at 152:2–5. This highlights an important point: divorce cases are *equitable* proceedings between spouses that are rarely (if ever) the best vehicle for adjudication of *legal* claims, like contract and tort claims, especially when such claims are purportedly held by third parties, but even when such claims are between the spouses. See *Caulfield v. Caulfield*, 515 N.W.2d 278, 280–81 (Wis. Ct. App. 1994); *Stuart v. Stuart*, 410 N.W.2d 632, 634–36 (Wis. Ct. App. 1987).

At most, the state court adjudicated, in the divorce case, whether Hink's spending for the mother-in-law addition was "a 'gift' or 'inheritance'", as opposed to a debt recoverable on some legal or equitable ground. Landis's objection to Hink's claim states his intention to relitigate that issue here, if this court allows that. ECF No. 63, at 6 ("The Agreement was modified verbally and through digital messages based on the actions and statements of the Claimant and Ex-Wife, including several statements indicating that the alleged loan was in fact a 'gift' or 'inheritance.'"). To that limited extent, the court presumes that the first step in the issue-preclusion analysis is satisfied as a matter of law (i.e., that the parties to the divorce proceeding actually litigated whether Hink's spending was a gift and the divorce court rejected that contention as a necessary part of its judgment). But even if this court were ultimately to decide that Landis cannot relitigate *that* issue in this bankruptcy case, he has raised several others that have not been adjudicated—i.e., to which even the first step in the issue-preclusion analysis is *inapplicable* as a matter of law—and on which resolution in his favor could require the court to disallow the largest remaining portion of Hink's claim.

Even assuming, for the sake of argument, that the state court in Landis's divorce case did actually and necessarily (if mostly implicitly) adjudicate all of the issues that Landis raises in his objection to Hink's claim (or enough of those issues to establish the validity and amount of Hink's claim), consideration of the relevant factors shows that it would be unfair to bar Landis from relitigating those issues in this bankruptcy case. The first factor may weigh against Landis: presumably, he could have appealed the state

court's judgment to contest the characterization and division of the marital property, though one wonders about his ability to appeal the court's identification and division of a debt to Hink, except insofar as the court found that Hink's payments gave rise to a marital debt rather than a gift. Hink's briefing offers no help, stating simply that Landis "was able to seek review of the state trial court's decision and failed to do so." ECF No. 90-1, at 12 (citing Wis. Stat. §808.03). The second factor—to the extent one can make sense of it—seems inapplicable, as there is no readily apparent legal question to address in adjudicating Landis's objection to Hink's claim, Hink's request to be repaid for the mother-in-law suite does not appear to involve multiple claims (at least as that term is used in the preclusion context), and it is unlikely that applicable Wisconsin law on issues like contract formation has drastically changed in the few years that have passed since the final divorce judgment was entered.

      The three remaining factors all weigh in Landis's favor. First, there will almost certainly be significant differences between the relevant proceedings in Landis's divorce case and the necessary proceedings in this case. The state court in the divorce action had several serious issues to address that rarely or never arise in bankruptcy cases, including custody and placement of Landis and Linda's minor children. There was little evidence presented on any purported debt to Hink or the facts allegedly giving rise to any such debts, including about the agreement that Landis and Linda apparently made to repay her for the addition; Hink did not testify at all; and the court made no express findings or conclusions on why there was a debt (rather than a gift), other than to divide responsibility for it between Landis and Linda. Hink's claim, and the asserted debts on which it is based, will likely receive a great deal more attention here because that claim is for more than two-thirds of the total amount of the allowed claims in this

case.[10] And, again, Hink was <u>not</u> a party to the divorce case, but she *is* a party to this bankruptcy case, which plainly affects the quality and extensiveness of the proceedings with respect to any debt she may be owed, as it means that such a debt will be subject to adversarial litigation, and Hink will be subject to the requirements ordinarily imposed on parties to such litigation.

Second, Hink is the party seeking preclusion, and she plainly had a lower burden of persuasion in Landis's divorce case than she has here because she had *no* burden in that case; again, she was not a party to that case. As discussed above, in the divorce case, Landis asserted that Hink paid for the addition to his and Linda's home as a gift—a characterization the divorce court did not adopt. By statutory default, then, that court treated Hink's payments to construct the addition as giving rise to a divisible marital debt. Hink purports to have triumphed without ever being required to do *anything*, which is significant because even if Landis had prevailed and the final divorce judgment had deemed the addition a gift (not the basis for a debt), that almost certainly would not have prevented *Hink* from litigating whether Landis owes her a debt. See, e.g., *Pasko v. City of Milwaukee*, 643 N.W.2d 72, 80 (Wis. 2002) ("Normally nonparties to an action are not bound to a judgment therein based on the principle that everyone should have their day in court."); see also *Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971) ("Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. . . . Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stands squarely against their position."); *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("It is a principle of general application in Anglo-American jurisprudence that

---

10. After removing the already-disallowed amount of $6,535.63 from Hink's claim (No. 6) and the total amount of all claims, Hink asserts a claim of $100,249, which is 68.5% of the total amount of the claims ($23,019.06 in priority unsecured claims and $123,319.42 in nonpriority unsecured claims for a total of $146,338.48). See *supra* note 1.

one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."). But see *Jensen v. Milwaukee Mut. Ins. Co.*, 554 N.W.2d 232, 235 (Wis. Ct. App. 1996) (first citing *Michelle T.*, 495 N.W.2d at 328; and then citing *Mayonia M.M. v. Keith N. (In re Paternity of Mayonia M.M.)*, 551 N.W.2d 31, 34–35 (Wis. Ct. App. 1996)) ("Wisconsin case law has . . . recognized the potential for defensive use of issue preclusion against a nonparty to the prior action.").[11]

Finally, matters of public policy and individual circumstances show that it would be unfair to apply issue preclusion here. For one thing, Wisconsin public policy with respect to divorce proceedings (as set forth in its caselaw and statutes) is that they are primarily about the spouses, their minor children (if any), and their finances. With respect to financial obligations (ordinarily, a main concern of the bankruptcy court), divorce cases are a means by which Wisconsin courts disentangle spouses by allocating and apportioning their respective responsibilities. But such proceedings are not typically a mechanism for validating the unadjudicated claims of third-party creditors. Indeed, Wisconsin law *requires* every divorce judgment that contains a property division to include a "[n]otification that the judgment does not necessarily affect the

---

11. The plaintiff in *Jensen* argued that "Wisconsin law does not recognize the defensive use of issue preclusion against a plaintiff who was not a party plaintiff in the prior action." 554 N.W.2d at 234. The Wisconsin court of appeals disagreed based on another case from the same court that "extends the concept of plaintiff in the prior action to those additional persons who had a 'sufficient identity of interest' with the party such that their interests are deemed to have been litigated in the prior action." *Id.* (quoting *Mayonia M.M.*, 551 N.W.2d at 35). Issue preclusion is rarely applied defensively against a nonparty to the prior action—as *Jensen* points out, before that case, it "ha[d] never been successfully used in any reported appellate decision" in Wisconsin—because "[i]t is a violation of due process for a judgment to be binding on a litigant who was not a party *or a privy* and therefore has never had an opportunity to be heard." *Id.* (alteration in original) (emphasis added) (quoting *Mayonia M.M.*, 551 N.W.2d at 35). Accordingly, even if Landis had convinced the state court in the divorce case that the addition was a gift, to use that ruling to preclude Hink from later suing him to assert a claim based on the addition, he would have to prove that Hink and Linda were in privity such that Hink's interests were litigated in the divorce case, and he would *then* have to prove that "fundamental fairness" entitled him to the use of issue preclusion against her. *Id.*

ability of a creditor to proceed against a party or against that party's property even though the party is not responsible for the debt under the terms of the judgment." Wis. Stat. §767.61(5)(b)(2). The final divorce judgment in Landis's case does not seem to contain this mandated notification, but the statutory requirement itself reinforces the notion that divorce cases are generally not concerned with the rights of third parties. And Wisconsin law makes this all the clearer by expressly specifying that the parties to "an action affecting the family", such as divorce, are "the petitioner" and "the respondent". Wis. Stat. §767.205(1). There is only one other potential party to such an action: "[t]he state", which is only a party in certain circumstances involving minor children. §767.205(2).

Given all this, Landis could not have been incentivized to fully litigate the relatively minor issue of his and Linda's liability to Hink for the mother-in-law addition—including whether the addition was a gift, an anticipated inheritance, or something for which Landis and Linda owe Hink a debt—assuming he even could have if he had wanted to: whether he could have compelled Hink to respond to discovery requests or to appear and testify in court, he certainly could not have forced her to raise and prosecute her claim for the mother-in-law addition in the ordinary course of the divorce case; even a *party* to a Wisconsin divorce case (i.e., one of the spouses) cannot be required to assert and litigate legal claims (like tort and contract claims) against the other *party* in the divorce case itself. *Caulfield*, 515 N.W.2d 278; *Stuart*, 410 N.W.2d 632. The record most strongly suggests that, consistent with Wisconsin law, Landis viewed the divorce case as encompassing the extent of his responsibility to Linda (his former spouse) with respect to any debts to Hink (and others) that they shared or may have shared but extending no further with respect to such debts. It would be unfair to penalize him for this entirely reasonable (not to mention, accurate by all accounts) view

of those proceedings.[12] In sum, applying Wisconsin's multi-factor issue-preclusion test (or list) to the circumstances presented here and "mak[ing] a holistic, discretionary determination regarding fundamental fairness", *Aldrich*, 814 N.W.2d at 458, the court concludes that the divorce judgment does not preclude Landis from contesting in this bankruptcy case the validity or amount of Hink's claim based on funds she provided for construction of the mother-in-law addition in Landis's former marital residence.

III

Therefore, Hink's motion for summary judgment is denied.[13]

#####

---

12. Although this court is not aware of any directly applicable Wisconsin precedent, courts considering whether to apply preclusion principles (mainly claim preclusion and merger and bar, rather than issue preclusion) under the law of other states have broadly held that non-spouses cannot use those principles to gain the benefit of divorce judgments to which they were not parties. See *Wichman v. Shabino*, 851 N.W.2d 202, 206–07 (S.D. 2014) (affirming a lower court's ruling that the holder of a partially time-barred contract claim against her daughter's former spouse could not, instead, enforce against him the divorce decree between him and her daughter, under which he was responsible for paying the relevant debt, because she was not a party to the divorce decree); *Recovery Res., LLC v. Cupido*, 818 N.W.2d 787, 791–92 (N.D. 2012) (first citing *Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005, 1009 (Ariz. Ct. App. 1995); then citing *Gardner Aldrich, LLP v. Tedder*, 421 S.W.3d 1, 7 (Tex. Ct. App. 2011); and then citing *St. Mary of Nazareth Hosp. v. Kuczaj*, 528 N.E.2d 290 (Ill. App. Ct. 1988)) ("The court's division of debts in a divorce action does not affect the rights of third-party creditors. . . . Because there is no identity of parties, subject matter, or cause of action between the divorce proceeding and this proceeding, the findings in the divorce proceeding do not bar this action."); cf. *Leathers v. Leathers*, 856 F.3d 729, 750–51 (10th Cir. 2017) (citing *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017)) (rejecting a "res judicata contention" as "meritless" because the party seeking preclusion "was not a party to, and neither quiet title nor reformation [the relevant underlying issues] was litigated in, the divorce case"). Minimally, these cases support the conclusions above that divorce proceedings differ significantly from other kinds of proceedings, that Landis was not fully incentivized to litigate any of the relevant issues raised here in the divorce case, and that it would, therefore, be fundamentally unfair to not allow him to litigate those issues now.

13. As discussed above, the court determines that Landis has not objected to the portion of Hink's claim that is for the asserted siding debt. See *supra* note 6. As noted, Hink asserts that judicial estoppel entitles her to summary judgment against Landis on his objection to her claim *only* with respect to the siding-related portion of her claim, meaning that, to the extent her motion is based on judicial estoppel, she seeks summary judgment denying Landis relief (i.e., disallowance of that portion of her claim) that he has not asked the court to grant him. See *supra* text accompanying note 6. Hink's motion is denied to that extent, for that reason. The motion is otherwise denied, as explained above, because issue preclusion does not entitle Hink to summary judgment on Landis's objection to the portion of her claim that is for the asserted addition debt.